305 So.2d 187 (1974)
Henry DIRK, Appellant,
v.
STATE of Florida, Appellee.
No. 44585.
Supreme Court of Florida.
May 29, 1974.
Robert E. Jagger, Public Defender, and Jeffrey L. Myers, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Richard C. Booth and Charles Corces, Jr., Asst. Attys. Gen., for appellee.
Robert F. Williams, Miami, and Thomas E. Norman, Jr., Tallahassee, for Florida Legal Services, Inc., as amicus curiae.
ROBERTS, Justice.
This cause has been transferred to us by the District Court of Appeal, Second District, pursuant to Florida Appellate Rule 2.1, subd. a(5), 32 F.S.A., to review an order of the Circuit Court of Pinellas County upholding the constitutional validity of Section 832.05, Florida Statutes, thereby vesting jurisdiction in this Court pursuant to Article V, Section 3(b)(1), Florida Constitution (1973), F.S.A.
Appellant was charged with obtaining property in return for a worthless check negotiated on June 14, 1972, in violation of Section 832.05, Florida Statutes. More particularly, appellant was charged with obtaining currency and merchandise of the value of $75.27 from a Publix Super Market by making and delivering a bank check for which he did not have sufficient funds in the bank, with knowledge that he had insufficient funds. Attacking the constitutionality of this statute, he filed a motion to dismiss the information filed against him. The trial court entered an order denying the motion to dismiss and upholding the constitutional validity of the questioned statute. Appellant then pled nolo contendere to the charge, and the trial court placed him on probation for one year, withholding adjudication of guilt.
The sole question presented by appellant for our determination is the constitutionality vel non of Section 832.05, Florida Statutes.
We find no reason to recede from our former decisions and the decision of the District Court of Appeal, Second District, in Snyder v. State, 196 So.2d 217 (Fla. App. 1967), upholding the validity of this statute against constitutional attacks as those now presented by appellant. Shargaa v. State, 84 So.2d 42 (Fla. 1955); Ennis v. State, 95 So.2d 20 (Fla. 1957), cert. *188 denied, 355 U.S. 868, 78 S.Ct. 117, 2 L.Ed.2d 74. See also, McQuagge v. State, 80 Fla. 768, 87 So. 60 (1920); United States v. Frazier, 444 F.2d 235 (5th Cir.1971); State v. Medlin, 273 So.2d 394 (Fla. 1973); State v. Kahler, 232 So.2d 166 (Fla. 1970); Jefferson ex rel. v. Sweat, 76 So.2d 494 (Fla. 1954). Furthermore, Section 832.05, Florida Statutes, conveying a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice, is neither vague nor ambiguous.
We are not unmindful of three recent decisions by the Supreme Court of the United States relative to criminal law presumptions;[1] however, they have been carefully examined and we find that they do not vitiate our prior decisions upholding the constitutionality of Section 832.05, Florida Statutes.
Accordingly, we hold Section 832.05, Florida Statutes, to be constitutional and affirm the judgment of the trial court.
It is so ordered.
ADKINS, C.J., and BOYD and McCAIN, JJ., concur.
ERVIN, J., concurs in part and dissents in part with opinion.
DEKLE, J., concurs in part and dissents in part and agrees with ERVIN, J.
ERVIN, Justice (concurring in part; dissenting in part).
Appellant was specifically charged with violating Section 832.05(3), F.S., but he attacks Chapter 832, F.S. generally as violative of his rights to due process and against self-incrimination under the Federal and State constitutions. Florida Legal Services was granted leave to file a brief as amicus curiae on behalf of Appellant.
Appellant urges us to reconsider our prior decisions upholding Section 832.05 because the United States Supreme Court has since clarified the constitutionality of statutory criminal presumptions, such as provided by Section 832.05(6). A cursory review of the leading United States Supreme Court cases in this area shows Appellant's allegation has merit.
The United States Supreme Court first adopted the "rational connection" test for statutory presumption in Mobile, Jackson, & Kansas City R.R. Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78 (1910), which held that a statutory presumption was constitutional so long as there was a rational connection between the fact proved and the fact presumed. Turnipseed, supra, was a civil case, but the Court later extended the test to criminal cases in Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed.2d 1519 (1943). The Court more recently applied the rational connection test to statutory criminal presumptions in United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), and United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).
The rational connection test was vague, however, as to the nature and measure of the connection between the fact proved and the fact presumed. Thus, the Court tried to clarify the standard in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). There the Court said:
"The upshot of Tot, Gainey, and Romano is, we think that a criminal statutory presumption must be regarded as `irrational' or `arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. ..." 395 U.S., at *189 36, 89 S.Ct. at 1548. (Emphasis supplied.)
In a footnote in Leary, supra, the Court stated that since the challenged presumption failed to satisfy the "more likely than not" standard, it "need not reach the question of whether a criminal presumption which passes muster when so judged must also satisfy the criminal `reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use." 395 U.S., at 37, note 64, 89 S.Ct. at 1548.
In Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the Court again failed to resolve the question of the reasonable doubt standard by deciding that one statutory inference therein met both the more likely than not and the reasonable doubt standards, and another inference failed to satisfy even the less demanding more likely than not standard.
However, in Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), the Court finally settled the issue in upholding the presumption that the unexplained possession of recently stolen mail including United States Treasury checks constituted prima facie evidence of knowledge that the mail was stolen. There the Court said:
"... What has been established by the cases [Gainey, Romano, Leary and Turner], however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process." 412 U.S. at 843 93, S.Ct. at 2362, 37 L.Ed.2d, at 386.
In Romano, supra, the Court reiterated that the limitations of due process under the Federal Constitution apply equally to federal and state statutory presumptions. 382 U.S., at 139, 86 S.Ct. 279. Thus, in my opinion, the test finally and clearly enunciated in Barnes, supra, applies in the instant case and requires this Court to re-examine its prior opinions with respect to the presumptions of Section 832.05(6). For a more detailed discussion of statutory presumptions, see "The Unconstitutionality of Statutory Criminal Presumptions," 22 Stan.L. Rev. 341 (1970), and "The Constitutionality of Statutory Criminal Presumptions," 34 U.Chi.L.Rev. 141 (1966).
Upon review of the instant statute, it appears the essential elements of the crime under Section 832.05(3) are: (1) obtaining any services, goods, wares or other things of value by (2) the making, drawing, uttering, issuing or delivery of (3) a check, draft or other written order upon any bank, person, firm or corporation (4) with knowledge by the maker at the time thereof of insufficient funds on deposit in or credit with the drawee, and (5) intent to defraud. With respect to intent to defraud as an indispensable element of the crime, see United States v. Frazier, 444 F.2d 235 (5th Cir.1971) (quoting Green v. State, Fla.App. 1966, 190 So.2d 614, 616), and Ennis v. State, Fla. 1957, 95 So.2d 20. But as to proof of the foregoing elements, we held in Shargaa v. State, Fla. 1955, 84 So.2d 42, that the statute makes introduction into evidence of a check marked insufficient funds alone sufficient to prove a violation thereof.
As I interpret these cases, they hold in effect that simple introduction into evidence of such a check is all the state must do to prove a violation of the statute and all the elements thereof, including scienter and intent. Subsection (6), thus interpreted, must then meet the constitutional standards for such presumptions enunciated by the United States Supreme Court, which in my opinion it fails to do. Perhaps it might have passed constitutional *190 muster under the old test requiring only sufficient rational connection between the fact proved  the return of the check marked insufficient funds  and the facts presumed therefrom  the knowledge of insufficient funds and the intent to defraud. But a rational connection is no longer the constitutional yardstick since Barnes, supra, and quite clearly the presumptions of subsection (6) fail the reasonable doubt and more likely than not standards now applicable for several reasons.
There are many likely situations wherein a check might be returned for insufficient funds; for example:
1) Honest or careless mistake in computing one's own bank account balance.
2) Mistake or delay in computing or crediting one's account by the bank.
3) Loss or delay of mail deposits.
4) Withdrawal from or closing of an account by a joint party in the account.
5) Advance cashing of a check by a party agreeing to delayed cashing.
6) Garnishment of an account.
7) Revocation of provisional credit.
8) Levy on an account by the Internal Revenue Service.
In none of these situations would it be both beyond a reasonable doubt and more likely than not that a maker had criminal knowledge of insufficient funds and intent to defraud, the test here applicable. Yet subsection (6) would require a person charged with violating Section 832.05 to overcome precisely those presumptions in order to prove his innocence. Common sense dictates a reasonable doubt under such circumstances where no proof other than the check itself is introduced into evidence.
Subsection (6) also appears to be violative of Appellant's constitutional right against self-incrimination. As a matter of right, every defendant is presumed innocent until proven guilty. But under the statute the State need not prove each element of the crime; rather, it need only introduce into evidence a defendant's check marked insufficient funds. Unless the defendant then proves his innocence, he may be convicted under the statute. As a practical matter, it seems to me a defendant must then himself testify as to his lack of scienter and intent in order to rebut the statutory presumptions. Clearly, this is constitutionally infirm.
Subsection (6) also violates the rule that statutory presumptions may not operate retrospectively. 29 Am.Jur.2d § 159, n. 12; United States v. One 1939 Model Ford Pickup Truck, 35 F. Supp. 905 (E.D.S.C. 1940), and State v. Durein, 70 Kan. 1, 78 P. 152 (1904), aff'd, 208 U.S. 613, 28 S.Ct. 567, 52 L.Ed. 645 (1907). The statute as interpreted provides that introduction into evidence of a check dishonored for insufficient funds constitutes prima facie evidence of knowledge of insufficient funds and intent to defraud. Under the statute, however, the fact proved (dishonor) necessarily occurs later in time than the facts presumed (scienter and intent), and thus the presumptions are retroactive and as such are invalid. As noted above, a check could be dishonored by the bank for many reasons occurring in the interim other than those presumed by the statute. Furthermore, the person who actually performs the act resulting in dishonor of a check is not the maker nor the payee, but a third party  the bank; yet scienter and intent of the maker are presumed therefrom. In essence, these elements of the crime are presumed based upon the actions of a third party. This often results in inequitable application of the statute since favored customers are frequently permitted by the bank to overdraw their accounts without penalty, and others not so favored are subject to prosecution under the instant statute, *191 within the discretion of the bank. See Section 674.401, F.S.
Finally, it appears to me that the statute in its present form, with its ease of proof facilitated by subsection (6), has been abused for private purposes, namely the collection of debts. See Consumer Affairs in Florida: A Report to Governor Reubin O'D. Askew, 140-145 (1973). In my opinion, private debts arising from the evils intended to be prohibited by this statute should be collected not by coercion under the criminal law, but by way of civil remedy. The presumption created by subsection (6) only encourages this abuse of process.
More and more examples come to light of the abuse of the check collecting process using the machinery of state statute and the inferior courts as the instrumentalities. These abuses coupled with the harsh requirements of excessive bail are reaching the proportions of involuntary servitude for debt. Constitutional safeguards to relieve the impact of these harsh processes should not be ignored. If these applicable safeguards were brought to bear, much of the harshness of check collecting would be curtailed. Apparently no relief at the state level is in sight but there is hope the Federal courts may intervene.
In summary, I would reconsider our prior decisions regarding Section 832.05 in light of the recent United States Supreme Court decisions in the area of statutory criminal presumptions. For the reasons stated, I find unconstitutional only subsection (6) of Section 832.05 and would recede from our prior decisions to that extent. I find, however, the remainder of the statute constitutional and would preserve it otherwise intact. I would, therefore, reverse Appellant's conviction and remand to the court below for further proceedings consistent herewith.
DEKLE, J., agrees.
NOTES
[1] Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed. 380 (1973); Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).