387 So.2d 559 (1980)
STATE of Florida, Appellant,
v.
Harry Lorenzo McCray, Appellee.
No. 80-537.
District Court of Appeal of Florida, Second District.
September 12, 1980.
*560 Jim Smith, Atty. Gen., Tallahassee, and James S. Purdy, Asst. Atty. Gen., Tampa, for appellant.
Jack O. Johnson, Public Defender, Bartow, and Susan G. Sexton, Asst. Public Defender, Tampa, for appellee.
GRIMES, Judge.
The state appeals the dismissal of its information charging appellee with murder in the second decree.
Appellee's motion to dismiss, filed pursuant to Florida Rule of Criminal Procedure 3.190(c)(4), set forth the following facts:
1. Witnesses will place the Defendant and the victim in the parking lot of the New Orleans Baptist School at 12th and Osborne, Tampa, Florida, on the afternoon of April 30, 1979.
2. Witness Barbara Dietrich will state that as she drove up into the parking lot of the school she heard a bang and thought it was a car backfiring.
3. As she began to get out of her car she saw a man and a woman, a black couple, standing in back of a car.
4. The woman started walking away and began to yell, "help me, I've been shot."
5. She then observed the Defendant to stand motionless for approximately two minutes, whereupon he got into his car and drove off.
6. At no time did she see a gun in the hand of either the victim or the Defendant.
7. Witness Patricia Fanning will testify that on that afternoon she was working at the school when she heard what she thought was a car backfire.
8. She then heard somebody yell they had been shot.
9. Upon going outside to investigate, she saw the victim in the courtyard of the school with blood all over the front of her.
10. When the victim asked, "Help me", the witness went to her and saw that the victim held a pistol in one hand.
11. She took the pistol from the victim and rendered assistance.
12. At no time did the victim make any other statements to either of the above listed witnesses.
13. Detective Reynolds, of the Tampa Police Department, will testify that he went to Tampa General Hospital and interviewed the victim in the emergency room, but that because the victim was about to go into surgery, her only statement was that her husband Harry had shot her.

*561 14. The Defendant, Harry L. McCray, was the husband of the victim.
15. While at Tampa General Hospital, Detective Reynolds received information that the Defendant had surrendered to Major John S. Kirk of the Hillsborough County Sheriff's Office.
16. Detective Reynolds was subsequently advised by the operating room physician that the victim had survived surgery and was in stable condition.
17. There was no further investigation of the case, other than to determine that the gun taken from the victim had not been fired.
18. Major John Kirk will testify that on that afternoon the Defendant entered his office and stated, "I've shot my wife."
19. Upon determining that the Defendant was not armed, Major Kirk advised the Defendant to make no further statements and to call his lawyer, which he did.
20. Approximately two weeks after the shooting, on May 13, 1979, the victim died in Tampa General Hospital as a result of complications from her wounds.
21. Dr. Lee Miller, Medical Examiner, will testify that there was one bullet wound, entry from the rear and exit from the chest.
The state admitted these facts but added that the victim and appellee had commenced dissolution proceedings.
The motion to dismiss in criminal practice is similar in many respects to the summary judgment in civil proceedings. State v. J.T.S., 373 So.2d 418 (Fla. 2d DCA 1979). The motion should be granted only where the most favorable construction of the facts to the state does not establish a prima facie case of guilt. State v. Smith, 348 So.2d 637 (Fla. 2d DCA 1977). If there is any evidence upon which a jury of reasonable men could convict, the court should deny the motion. State v. Hires, 372 So.2d 183 (Fla. 2d DCA 1979). Proof of state of mind for the purpose of second decree murder is a jury question which cannot be resolved on a motion to dismiss. State v. Rogers, 386 So.2d 278 (Fla. 2d DCA 1980).
We find the undisputed facts under consideration in this case more than enough to withstand the motion to dismiss. While no one actually saw the shooting, appellee admitted that he had shot his wife, and she said the same thing in a statement which may be admissible at trial as a dying declaration. At least one witness saw appellee in his wife's presence immediately following the firing of the shot and then saw him leave the scene shortly thereafter. Finally, the gun which was found in the hand of the victim had not been fired, and she had been shot in the back. The undisputed facts made a prima facie case for the state.
REVERSED and REMANDED.
HOBSON, Acting C.J., and CAMPBELL, J., concur.